## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| REBECCA WYSOCKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.  10-3258 |
| | ) |
| KAREN CRUMP, | ) |
| | ) |
| Defendant. | ) |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on Defendant Karen Crump's Motion for Summary Judgment (d/e 16 ).  Because this Court finds that Defendant is entitled to qualified immunity on the individual capacity claim and the Eleventh Amendment bars the official capacity claim, Defendant's Motion for Summary Judgment is GRANTED.

## I.  FACTS

On summary judgment, this Court considers the facts in the light most favorable to the plaintiff.  <u>Valance v. Wisel</u>, 110 F.3d 1269, 1276 (7th Cir. 1997).  In her Response to Defendant's Motion for Summary

Judgment, Plaintiff states that all of Defendant's "Undisputed Material Facts" are material and undisputed except Facts 24, 25, and 36. Plaintiff disputes Facts 24 and 25, in which Defendant states that T.W.'s October 5 suspension was based on discipline initiated on October 4. Plaintiff disputes that T.W.'s behavior caused the October 5 suspension and argues that his suspension was a result of her conversation with Defendant on October 5. In her Response, Plaintiff provides an excerpt from her deposition testimony describing her conversation with Defendant on October 5. Plaintiff asserts that Fact 36, which states that Kathy Crum, Director of Teaching and Learning, stated she would have suspended T.W. had she been the principal, is immaterial. Accordingly, the facts, taken in the light most favorable to Plaintiff, are as follows.

Plaintiff's son, T.W., is a student at Wanless Elementary School in Springfield, Illinois, where Defendant Karen Crump is principal. In the 2010-11 school year, T.W. was a student in a second-grade classroom taught by Sheila Jones. In Plaintiff's words, T.W. was "in bad form" at that time. (Undisputed Material Fact 9). Plaintiff stated that T.W. is

bipolar, and there is "a lot to deal with and there's a lot of screaming and a lot of yelling." (Undisputed Material Fact 9).  From August 31, 2010 through October 5, 2010, T.W. received seven disciplinary referrals.  The seventh disciplinary referral, issued on October 4, 2010, and the subsequent suspension issued on October 5, 2010 are the subject of this case.

T.W.'s first referral was issued by Jones on August 31,2010 for "disruptive behavior occurring throughout the day." (Undisputed Material Fact 12, 13).  On that occasion, Defendant spoke with T.W., and Plaintiff and gave T.W. one week of recess detention.  On September 10, 2010, T.W.'s art teacher issued the second referral because T.W. was being disruptive, calling his art teacher "stupid," and trying to push his table against other students.  (Undisputed Material Fact 14).  Defendant spoke with T.W., called Plaintiff to report T.W.'s behavior, and gave T.W. three noon detentions.  Jones issued T.W.'s third referral on September 13, 2010 because T.W. was "hitting another student with his book, exploding verbally, and calling students and Jones 'bastards' and

Jones a 'freak.'" (Undisputed Material Fact 16). Defendant again called Plaintiff to report T.W.'s behavior and, this time, T.W. was sent home early as punishment at 1:00 p.m. each day from September 14 through September 17, 2010.

T.W.'s first three-day suspension was based on a referral initiated by Jones on September 15, 2010 after T.W. was disruptive throughout the morning. After not receiving a reward because he had not done his homework, T.W. "yelled, kicked furniture, called Jones names, and refused to leave the room after being directed by Jones to do so three times." (Undisputed Material Fact 18). Defendant removed T.W. from the classroom and kept him with her until 1:00 p.m. Defendant telephoned Plaintiff to report T.W.'s behavior and then suspended T.W. from September 20 to September 22, 2010.

On September 27, 2010, Jones again referred T.W. for "becoming very angry, shouting, kicking furniture, dumping over his desk and chair, and using foul language." (Undisputed Material Fact 20). T.W. also called Defendant an "asshole" while in her office for discipline.

(Undisputed Material Fact 20).  Defendant spoke with T.W., called Plaintiff, and then assigned T.W. four detentions and sent him home for the day.

T.W.'s next suspension was based on a referral initiated by Defendant on September 28, 2010, because T.W. hit another student in the face with a book bag and pushed Defendant after being told to stand by her.  Defendant talked to T.W., called Plaintiff, sent T.W. home, and suspended him from September 29 to October 1, 2010.

On October 4, 2010, Defendant called Plaintiff and told her that T.W. had behavior problems at school that day.  Kathy Crum ("Crum"), Director of Teaching and Learning and Defendant's managing principal, was in Defendant's office on October 4, 2010 when Defendant called Plaintiff about T.W.'s behavior.  Crum stated that she did not see or hear anything inappropriate during Defendant's call to Plaintiff.  Later that day, Plaintiff sent an e-mail to the school superintendent in which she complained about Defendant's conduct with her son.

On October 5, 2010, Defendant issued the suspension that is the

subject of this case.  The parties agree that on the morning of October 5,

2010, Plaintiff met with Defendant at Wanless Elementary School

regarding T.W.[1]  The parties also agree that, during the conversation,

Plaintiff asked whether T.W. was suspended and that, at some point on

October 5, 2010, Defendant suspended T.W.  The parties dispute the

content of their conversation on October 5 and dispute at what point

Defendant issued the suspension.

Defendant claims that the suspension was the result of the

discipline initiated by Defendant on October 4, 2010 when T.W.

"became upset when not put at the front of the line before school,

refused to get in line, hit [Defendant] on the arm, and threw his book

bag at her."  (Defendant's Fact 24).  Defendant states that she "talked to

T.W., spoke briefly to [Plaintiff], sent T.W. home, and suspended him

from October 5 - 7."  (Defendant's Fact 25).  Plaintiff disputes these two

facts (Defendant's Facts 24 and 25), arguing that T.W.'s suspension was

not a result of T.W.'s behavior on October 4 but was the result of a her

---

[1] The parties agree that Plaintiff spoke to Defendant about her personal grievance
regarding Defendant's treatment of T.W. and not regarding treatment of students in general.

conversation with Defendant on October 5.

According to Plaintiff, she met with Defendant on the morning of October 5, 2010 and asked her if T.W. was suspended.  Defendant said that T.W. was not suspended and would be given one more chance. Plaintiff then said, "Now, let me tell you that if you ever scream at my son like you did on the phone yesterday . . . ."  At that point, the conversation became "heated."  Defendant denied screaming at T.W. in such a manner on the previous day.  Plaintiff then told Defendant that her son "does not deserve to be yelled at like that and you set him off intentionally."  Defendant denied doing so, but Plaintiff argued that Defendant had in fact done so.  Finally, Defendant said, "Fine, then he's suspended."[2]  Plaintiff responded that her attorney would be contacting Defendant.  Plaintiff contends that Defendant suspended T.W. in reaction to Plaintiff's complaints on October 5, 2010 and not because of T.W.'s behavior on October 4, 2010.

---

[2]  In her deposition, Plaintiff stated that these statements reflect her best recollection of the conversation.  Plaintiff stated: "It's the conversation that went down." See d/e 17, Exhibit C, at 71.

Crum, Defendant's managing supervisor, stated that she and Defendant discussed T.W.'s conduct on October 4, 2011 and that Crum would have suspended T.W. had she been the principal. (Defendant's Fact 36). Plaintiff asserts that this fact is immaterial.

Plaintiff, claiming that Defendant's decision to suspend T.W. was in retaliation against her for complaining to Defendant about her son's treatment at school, brought this lawsuit against Defendant under 42 U.S.C. § 1983, alleging Defendant violated Plaintiff's First Amendment rights. Plaintiff names Defendant in her individual and official capacities.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction in this case because Plaintiff's claim is based on federal law. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Venue is proper because Defendant resides in Sangamon County, Illinois. See 28 U.S.C. § 1391(b) (a civil action where jurisdiction is not founded

solely on diversity of citizenship may be brought in a judicial district

where any defendant resides, if all defendants reside in the same State).

## III.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a

matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)

(quoting Fed. R. Civ. P. 56(c)).  The moving party must show that no

reasonable fact finder could return a verdict for the nonmoving party.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-54 (1986);

Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1139 (7th Cir.

1997).  A court must view the facts and draw all reasonable inferences in

the light most favorable to the nonmoving party.  See Trentadue v.

Redmon, 619 F.3d 648, 652 (7th Cir. 2010).  "In order to successfully

oppose a motion for summary judgment, the nonmoving party . . . must

do more than raise a metaphysical doubt as to the material facts.  Rather,

she must come forward with specific facts showing that there is a genuine issue for trial." <u>Gleason</u>, 118 F.3d at 1139 (citing <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)) (internal citations and quotations omitted).

## IV.  ANALYSIS

A claim of First Amendment retaliation under § 1983 involves a three-step inquiry:  (1) whether the plaintiff engaged in an activity protected by the First Amendment; (2) whether the plaintiff suffered an adverse act that would likely deter First Amendment activity in the future; and (3) whether the protected speech was "a causal connection between the two." <u>Watkins v. Kasper</u>, 599 F.3d 791, 794 (7th Cir. 2010) (citing <u>Bridges v. Gilbert</u>, 557 F.3d 541, 546 (7th Cir. 2009)); <u>see also</u> <u>Greene v. Doruff</u>, 660 F.3d 975, 977-80 (7th Cir. 2011) (clarifying the causation issue in First Amendment cases).

In the public employee context, whether an employee has a First Amendment right depends on: (1) whether the plaintiff spoke as a citizen on a matter of public concern, and (2) if so, whether the "relevant

government entity had an adequate justification for treating the employee differently from any other member of the general public." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (holding that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities").  In this case, the parties dispute whether a private citizen's speech to a public employee must be on a matter of public concern in order to be protected by the First Amendment.

Defendant has moved for summary judgment on three grounds. First, Defendant asserts that Plaintiff's speech was not constitutionally protected because it did not "touch upon a matter of public concern." See Landstrom v. Illinois Department of Children and Family Services, 892 F.2d 670, 679 (7th Cir. 1990)).  Second, Defendant asserts that Plaintiff cannot show that her speech was the but-for cause of Defendant's actions.  Finally, Defendant asserts that she is entitled to qualified immunity because it is not clearly established that suspending T.W. after hearing Plaintiff's complaint would violate a clearly

established constitutional right.  Plaintiff agrees that her speech was not on a matter of public concern.  She responds that her speech was nonetheless constitutionally protected because the public concern test does not apply to her case.  Plaintiff also maintains that her speech was the but-for cause of T.W.'s suspension and that Defendant is not entitled to qualified immunity.

Because Plaintiff cannot show that Defendant violated a clearly established constitutional right, Defendant is entitled to qualified immunity.  Therefore, this Court need not decide whether Plaintiff's speech was protected or whether a genuine issue of material fact remains regarding the remaining prongs of Plaintiff's claim.

## A.    Defendant Is Entitled to Qualified Immunity on the Individual Capacity Claim.

Qualified immunity protects governmental actors "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances the interest of holding "public officials

accountable when they exercise power irresponsibly" with the interest in shielding officials from "liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "[Q]ualified immunity provides 'ample room for mistaken judgments' and protects government officers except for the 'plainly incompetent and those who knowingly violate the law.'" Saffell v. Crews, 183 F.3d 655, 658 (7th Cir. 1999) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether Defendant is entitled to qualified immunity, the Court must determine: (1) "whether the facts alleged show that the [defendant's] conduct violated the plaintiff's constitutional rights" and (2) "whether the right was clearly established in light of the specific context of the case so that a reasonable official would have understood that his conduct would violate the right." Patterson v. Burns, 670 F. Supp. 2d 837, 847 (S.D. Ind. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. 223 (2009)). The Court may, in its discretion, address the second prong of the test

first.  <u>Pearson</u>, 555 U.S. at 242.

On the second prong of the qualified immunity inquiry, this Court finds that in 2010, the law was not clearly established such that a reasonable school principal would have known that a parent's communication with a school principal about a private matter would be entitled to First Amendment protection.

In 1990, the Seventh Circuit held that parents of grammar school children bringing a First Amendment retaliation claim against school officials were required to adequately allege statements that "'touch upon a matter of public concern' and thus implicate the [F]irst [A]mendment." <u>Landstrom</u>, 892 F.2d at 678-79 (quoting <u>Connick v. Meyers</u>, 461 U.S. 138, 146-48 (1983)).  The <u>Landstrom</u> case would seemingly resolve this case.  However, since 1990, the law pertaining to whether a private citizen's speech must be on a matter of public concern in order to be constitutionally protected has evolved.

The public concern requirement is rooted in <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968), and <u>Connick v. Myers</u>, 461 U.S. 138

(1983), in which the Supreme Court held that government employees' speech is protected by the First Amendment only when it touches upon a matter of public concern.  Connick, 461 U.S. at 147 (citing Pickering, 391 U.S. at 568).  The public concern test "was created to maintain the delicate balance between a citizen's right to speak (and the public interest in having thoughtful debate) and the employer's need to effectively provide government services."  Bridges v. Gilbert, 557 F.3d 541, 550 (7th Cir. 2009) (citing Garcetti, 547 U.S. at 418-19).  However, courts in other jurisdictions have declined to impose a public concern test outside of the public employee context.  See Jenkins v. Rock Hill Local School District, 513 F.3d 580, 586 (6th Cir. 2008) (holding that parents' speech to school officials is not subject to the public concern test, because the public concern test is "expressly limited to government employees and based solely on the need to balance the free speech rights of government employees with the government's needs as an employer"); Eichenlaub v. Township of Indiana, 385 F.3d 274, 284 (3d Cir. 2004) ("[O]utside the employment context[,] the First Amendment forbids retaliation for

speech even about private matters." ); Van Deelen v. Johnson, 497 F.3d 1151, 1156 (10th Cir. 2007) (holding that the public concern test "applies to claims brought by government employees – but its scope reaches no further"); Campagna v. Massachusetts Department of Environmental Protection, 334 F.3d 150, 155 (1st Cir. 2003) ("Since the reason for the test is missing in the present case—maintaining order in the governmental workplace—the [public concern doctrine] should not be applied here.") (citation omitted); Pinard v. Clatskanie School District 6J, 467 F.3d 755, 766 (9th Cir. 2006) ("Although [the] personal matter/public concern distinction is the appropriate mechanism for determining the parameters of a public employer's need to regulate the workplace, neither we, the Supreme Court[,] nor any other federal court of appeals has held such a distinction applicable in student speech cases, and we decline to do so here."); Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000) ("The 'public concern' requirement, developed in the context of public employee speech, has no place in the context of prisoner petitions for redress of grievances, which typically address matters of

personal concern.").

Since <u>Landstrom</u>, the Seventh Circuit has declined to apply the public concern test in the prisoner context. <u>Bridges</u>, 557 F.3d at 551 (holding that "a prisoner's speech can be protected even when it does not involve a matter of public concern"). In <u>Bridges</u>, the court stated that the public concern test was created in the public employment context in order to balance the citizen's right to speak with the government employer's need to provide services. <u>Id.</u> at 550 (citing <u>Garcetti</u>, 547 U.S. at 418-19). By comparison, the court reasoned, prison officials' concerns are of a very different nature than government employers and, while public employment is voluntary, imprisonment is not. <u>Bridges</u>, 557 F.3d at 550. In <u>Watkins v. Kasper</u>, 599 F.3d 791, 795-96 (7th Cir. 2010), the court further held that speech by prisoners who are employed by the prison is not subject to the public concern test, because "the dynamics of the government's relationships with prisoner-employees and with public employees are too dissimilar to transfer the public concern test to the prison context." <u>Id.</u> Similarly, in a non-prisoner context, the Seventh

Circuit has characterized the public concern test as specific to public

employees' free speech rights, although in <u>dicta</u>.  <u>See</u> <u>Vickery v. Jones</u>,

100 F.3d 1334, 1346 n.1 (7th Cir. 1996) ("Plaintiff concedes that he has

been unable to find any case that applies the 'public concern test' to a

private person communicating with or regarding a public employee, nor

were we able to do so.")

     Recently, the Northern District of Illinois reviewed the law in this

circuit and held that the public concern test did not apply to a First

Amendment retaliation claim brought by a private-citizen plaintiff

against the Village of Dolan and a Sergeant in the Dolan Police

Department.  <u>Nolan v. Village of Dolton</u>, No. 10-CV-7357, 2011 WL

1548343, at *1-2 (N.D. Ill. April 21, 2011) (noting that "the issue

whether only speech touching on a matter of public concern is protected

appears to be unresolved in this circuit").  The court found that, while

<u>Bridges</u> did not repudiate <u>Landstrom</u>'s application of the public concern

test in the context of non-public employees, "the logic of <u>Bridges</u> is

simply inconsistent with <u>Landstrom</u>, if <u>Landstrom</u> means that only

speech touching on a matter of public concern is protected." <u>Nolan</u>,

2011 WL 1548343, at *2.  The court concluded that "[s]ince Nolan is

neither a prisoner nor a governmental employee, it follows that her

freedom of speech is unabridged absent some governmental reason that

defendants have not attempted to proffer." <u>Nolan</u>, 2011 WL 1548343,

at *2.  Another district court in this circuit also declined to apply the

public concern requirement outside of the public employment context.

<u>See</u> <u>Foxworthy v. Buetow</u>, 492 F. Supp. 2d 974, 980 (S.D. Ind. 2007)

(holding that because "there are different interests at stake in a § 1983

retaliation action that do[es] not concern a government situation," a

different analysis must be used").

In analyzing whether a right was "clearly established" for the

purposes of the qualified immunity inquiry, this Court considers

decisions of the United States Supreme Court and the Courts of Appeal.

<u>United States v. Lanier</u>, 520 U.S. 259, 269 (1997).  In the present case,

the question of whether only speech touching upon a matter of public

concern is protected by the First Amendment is an unresolved matter in

this circuit.  See Nolan, 2011 WL 1548343, at *2.  The question of

whether Plaintiff's speech is protected is particularly unresolved because

Landstrom, which has not been overturned, holds that parents' speech

must be on a matter of public concern in order to be protected.

Landstrom, 892 F.2d at 679.  However, the reasoning in the more

recently decided Bridges and Watkins cases is inconsistent with

Landstrom and leads to the opposite conclusion.  Bridges and Watkins

suggest that the public concern requirement should not be imposed

where the Pickering-Connick rationale for limiting free speech protection

in government employment - namely, "to maintain the delicate balance

between a citizen's right to speak . . . and the employer's need to

effectively provide government services" - is absent.  See Bridges, 557

F.3d at 550 (citing Garcetti, 547 U.S. at 418-19);  Watkins, 599 F.3d at

795-96.  Following the Seventh Circuit's logic, Plaintiff's claim should

not be subject to the public concern test, given that Plaintiff spoke to

Defendant as a private citizen and there is no government employer

whose interests demand consideration.

At the same time, <u>Bridges</u>, a case about prisoner free speech, did not explicitly overrule <u>Landstrom</u>, a case that directly addresses the issue in this case.  Therefore, a reasonable person in 2010 may have believed that <u>Landstrom</u> was the governing law on the matter and that a parent's complaint to a school principal regarding a private matter was not constitutionally protected.

Because Plaintiff cannot show that it was clearly established that her speech to Defendant was constitutionally protected at the time of the events at issue, this Court finds that Defendant did not violate a "clearly established" constitutional right.  <u>See</u> <u>Patterson</u>, 670 F. Supp. 2d at 847 (citing <u>Saucier</u>, 533 U.S. at 201).  Therefore, Defendant is entitled to qualified immunity on the individual capacity claim.

## B.    Plaintiff's Official Capacity Claim Is Dismissed.

Plaintiff also named Defendant in her official capacity "for the purpose of implementing equitable relief."  (Compl. at 2.)  A suit against a state official in her official capacity is a suit against the State.  <u>Power v. Summers</u>, 226 F.3d 815, 818 (7th Cir. 2000).  Such a suit is barred by

the Eleventh Amendment unless: (1) Congress has abrogated the State's immunity from suit, (2) a State has waived its immunity and consented to suit, or (3) the suit is one for prospective injunctive relief pursuant to <u>Ex parte Young</u>, 209 U.S. 123, 15-60 (1908).  <u>Sonnleitner v. York</u>, 304 F.3d 704, 717 (7th Cir. 2002).  Because none of these exceptions apply, Defendant is entitled to summary judgment on the official capacity claim.

## V. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (d/e 16) is GRANTED.  This case is CLOSED.

ENTER: December 20, 2011

FOR THE COURT:

           s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE